UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

APRIL LEE NELSON, )
)
    Plaintiff, )
) No. 3:11-CV-98
) (GUYTON)
V. )
)
CHARLES FAIRCLOTH, *et al.*, )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 7]. Now before the Court is the Defendants' Motion for Summary Judgment. The Court finds this motion is now ripe for adjudication, and it will be **GRANTED IN PART** and **DENIED IN PART**.

### I. PROCEDURAL POSTURE

On February 11, 2011, Plaintiff filed this case in state court arguing that Deputy Charles Faircloth and Sergeant Robert Mansfield, while in the process of arresting Plaintiff, committed actions that were "negligent, wanton, and reckless, and violated the Civil Rights of the Plaintiff such as are protected pursuant to § 1983 of the U.S. Civil Rights Act as well as the Constitution of Tennessee." [Doc. 1-1 at ¶ 13]. Plaintiff also alleged that the Defendants caused and constituted a false arrest, malicious prosecution, outrageous conduct, negligent infliction of emotional distress, and intentional infliction of emotional distress. [Id. at ¶¶ 14-15].

On February 24, 2011, the Defendants – Charles Faircloth, Robert Mansfield, Paul White, and Anderson County, Tennessee – removed the case to this court based upon federal question jurisdiction under 28 U.S.C. § 1331. [Doc. 1]. The Defendants filed an Answer denying liability on the same date. [Doc. 2]. On July 3, 2012, the parties consented this case to the jurisdiction of the undersigned. [Doc. 7].

On December 31, 2012, the Defendants filed a Motion for Summary Judgment [Doc. 15], along with the Affidavit of Charles Faircloth [Doc. 15-1], the Affidavit of Robert Mansfield [Doc. 15-2], and the Affidavit of Paul White [Doc. 15-3]. In addition, the Defendants filed a Memorandum in Support of the Motion for Summary Judgment [Doc. 17], and a Concise Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment [Doc. 16].

The Plaintiff did not respond in opposition to the Motion for Summary Judgment on or before the time for responding expired on January 24, 2013, <u>see</u> E.D. Tenn. L.R. 7.1; Fed. R. Civ. P. 6(d), 5(b)(2)(E). Instead, the Plaintiff filed a Motion for Extension of Time to File Response [Doc. 19] on February 15, 2013. The Court granted this Motion for Extension of Time on February 21, 2013, and ordered the Plaintiff to respond to the Motion for Summary Judgment on or before March 18, 2013. [Doc. 22]. The Plaintiff did not meet this deadline. The Plaintiff filed her response to the Motion for Summary Judgment on March 19, 2013. [Doc. 25].

The Court entered an Order to Show Cause [Doc. 26], which directed the Plaintiff to show cause in writing before March 22, 2013, as to: why the Court should consider the substance of the Plaintiff's Response to Defendants' Motion for Summary Judgment and (2) why the Court should not dismiss the case for lack of prosecution. Plaintiff never directly responded to the Court's Order to Show Cause.

2

The conduct of Plaintiff's counsel, the recurring delays, and the failure to comply with the Court's Order in this case raise concerns under a pleothera of governing rules – see Fed. R. Civ. P. 16, 37; E.D. Tenn. L.R. 7.1, 7.2, 7.4, 83.6; Tenn. Sup. Ct. R. 8 - R.P.C. 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client"), R.P.C. 3.2 ("A lawyer shall make reasonable efforts to expedite litigation.") – and are almost certainly grounds for some type of dispositive or near-dispositive sanction. Nonetheless, the Court has considered the case on its merits through the summary judgment mechanism, because there is a strong preference in favor of such adjudication, see Krowtoh II LLC v. ExCelsius Int'l Ltd., 330 Fed. App'x 530, 538 (6th Cir. 2009).

## II. FINDINGS OF FACT

The Court finds that the record before the Court establishes the following facts:

On February 16, 2010, Deputy Charles Faircloth ("Deputy Faircloth") was dispatched to the home of Jason Nelson ("Mr. Nelson"), Plaintiff April Lee Nelson's ("Plaintiff") estranged husband, to investigate a potential Order of Protection violation. [Doc. 15-1 at ¶ 3]. Deputy Faircloth learned from Mr. Nelson and his mother, Sandra Nelson that Plaintiff had been repeatedly calling Mr. Nelson's home, in violation of the Order of Protection. [Id. at ¶ 4].

Deputy Faircloth verified through dispatch that the Order of Protection was still in effect and that Plaintiff was ordered to have no contact with Mr. Nelson. [Id.] Mr. Nelson and his mother informed Deputy Faircloth that Plaintiff had called the residence at least seven times that evening. [Id.] Mr. Nelson informed Deputy Faircloth that the calls were received at an hour that was past the normal bedtime of Plaintiff and Mr. Nelson's children. [Id.]. Mr. Nelson stated to Deputy Faircloth that he or his mother would answer some of the calls but the Plaintiff would hang-up and then call back. [Id.].

3

Deputy Faircloth drove to Plaintiff's place of employment, at 1411 Mountain Road in Andersonville, Tennessee. [Id. at ¶ 5]. Deputy Faircloth requested the assistance of another officer because the visit was initiated based upon an alleged violation of an Order of Protection. [Id.]. Sergeant Robert Mansfield ("Sergeant Mansfield") joined Deputy Faircloth at the Plaintiff's place of employment. [Doc. 15-2 at ¶ 3]. Upon arriving at the Plaintiff's place of employment, Sergeant Mansfield confirmed the existence of the Order of Protection, which arose out of Anderson County Chancery Court, case number 09CH0805. [Id.]. The Order of Protection was dated July 27, 2009 and enjoined the Plaintiff from "telephoning, contacting, or otherwise communicating with [Jason Ray Nelson], directly or indirectly" for a period of one year. [Id.; Doc. 15-1 at 46].

Once the officers entered Plaintiff's workplace, they were directed to a private room where they read Plaintiff her Miranda rights. [Doc. 15-2 at ¶ 4]. Plaintiff admitted to Sergeant Mansfield and Deputy Faircloth that she had called Mr. Nelson's residence earlier in the evening and that she was trying to reach her son. [Id.]. Plaintiff explained that she became angry when she was unable to speak to the children and began calling Mr. Nelson's residence repeatedly. [Id.].

At that point, Plaintiff attempted to make another call from her mobile phone, and Deputy Faircloth asked her to hang up the phone. [Id. at ¶ 5; Doc. 15-1 at ¶ 7]. Plaintiff ignored Deputy Faircloth's request and yelled at Deputy Faircloth. [Doc. 15-2 at ¶ 5]. Deputy Faircloth informed Plaintiff that she was under arrest for violating the Order of Protection, and Plaintiff immediately began shouting at both Deputy Faircloth and Sergeant Mansfield. [Doc. 15-2 at ¶ 5; Doc. 15-1 at ¶ 7]. Sergeant Mansfield also requested that Plaintiff hang up her phone, and Plaintiff reacted by throwing her phone at Sergeant Mansfield. [Doc. 15-2 at ¶ 5; Doc. 15-1 at ¶ 7].

4

Sergeant Mansfield and Deputy Faircloth again told Plaintiff that she was under arrest and asked that she place her arms behind her back. [Doc. 15-2 at ¶ 6; Doc. 15-1 at ¶ 8]. Plaintiff refused Deputy Faircloth and Sergeant Mansfield's requests and drew her arms in toward her body. As Deputy Faircloth attempted to handcuff Plaintiff, she screamed, "Don't put your hands on me!" and continued to pull away from Deputy Faircloth. [Doc. 15-2 at ¶ 6; Doc. 15-1 at ¶ 8].

Plaintiff fell to the floor, rolled on to her back, and kicked at both Deputy Faircloth and Sergeant Mansfield. [Doc. 15-2 at ¶ 6; Doc. 15-1 at ¶ 8]. Deputy Faircloth sprayed Plaintiff with two or three short bursts of pepper spray. [Doc. 15-1 at ¶ 8]. Deputy Faircloth and Sergeant Mansfield forced Plaintiff's hands behind her back as she continued to resist being handcuffed. [Id.; Doc. 15-2 at ¶ 6]. After successfully handcuffing Plaintiff, Sergeant Mansfield and Deputy Faircloth escorted Plaintiff to Deputy Faircloth's patrol car. [Doc. 15-1 at ¶ 8]. The officers transported Plaintiff to the Anderson County Detention Facility, where she was charged with violation of an Order of Protection and resisting stop, frisk, halt, and arrest. [Id. at ¶ 10].

### III. POSITIONS OF THE PARTIES

The Defendants move the Court to grant summary judgment in favor of all Defendants on the grounds that there is no genuine issue as to any material fact and the Defendants are entitled to summary judgment as a matter of law. [Doc. 15]. The Defendants maintain that the Plaintiff has failed to allege a violation of any specific right guaranteed by the United States Constitution. Defendants argue that Deputy Faircloth and Sergeant Mansfield had probable cause to arrest the Plaintiff and no Constitutional violation occurred. Further, Defendants argue that the Plaintiff has failed to dispute any material facts, and in addition, she has not demonstrated any basis for municipal liability.

The Plaintiff responds that the Defendants are liable under 42 U.S.C. § 1983 for false arrest and malicious prosecution. Plaintiff essentially adopts the Defendants' version of the facts, except that she alleges that she offered to allow Deputy Faircloth and Sergeant Mansfield to listen to recordings of the calls she placed, and they declined. Plaintiff argues that if the officers had listened to the calls, they would have found that the Plaintiff had not violated the Order of Protection. Plaintiff concedes, however, that: (1) Deputy Faircloth confirmed an Order of Protection was pending before he arrested the Plaintiff, [Doc. 25 at 2], and (2) prior to being arrested Plaintiff admitted to the officers that she had called Mr. Nelson's mother's residence that evening, [Id.].

## IV. STANDARD OF REVIEW

The parties are familiar with the standard of review, and they do not dispute the applicable standard of review. The standard of review can be stated succinctly as follows:

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

"In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party." Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). However, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to defeat a motion for summary judgment; there must be evidence on which the jury could reasonably find for the non-moving party." Moldowan v. City of Warren, 578 F.3d 351, 374 (6th Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The burden of establishing there is no genuine issue of material fact lies upon the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 330 n.2 (1986). When faced with a motion for summary judgment, the non-moving party is required to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (internal quotations omitted).

## V.     ANALYSIS

The Court has considered the parties' positions, and for the reasons stated herein, the Court finds that the Defendants are entitled to judgment in their favor on all claims under federal law. The Court will remand the claims based in state law.

### A.     Failure to Allege a Specific Violation of the Constitution of the United States

The Court finds that the Plaintiff has failed to allege any specific violation of the Constitution of the United States.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

In her Complaint [Doc. 1-1], Plaintiff alleges:

> Faircloth and Mansfield, continually and routinely acted with malice toward the Defendant [sic]. In doing so, they arrested and prosecuted her without properly identifying her as the perpetrator of a crime. Such actions are negligent, wanton, and reckless, and violated the Civil Rights of the Plaintiff such as are protected pursuant to § 1983 of the U.S. Civil Rights Act as well as the Constitution of Tennessee.

[Id. at 3]. This portion of the Plaintiff's complaint is the only portion of the complaint that attempts to correlate the Defendants' behavior to the Constitution of the United States or 42

7

Case 3:11-cv-00098-HBG   Document 34   Filed 04/10/13   Page 7 of 17   PageID #: 295

U.S.C § 1983. It does not, however, allege the violation of a right secured by the Constitution and laws of the United States. The Plaintiff does not identify any specific portion of the Constitution or its amendments that have allegedly been violated.

Thus, the Court finds that the Plaintiff, as an initial matter, has not alleged a specific violation of the Constitution. Judgment in favor of the Defendants could be granted on this basis alone. The undersigned has, nonetheless, considered the merits of this case further.

B.   **Probable Cause to Arrest**

Even if the Court were to consider the Plaintiff's statement in her Response that she "alleges that Defendants are liable to her for false arrest and malicious prosecution," [Doc. 25 at 1], to be a pleading presenting a claim, the Court finds that the Defendants are entitled to judgment in their favor on both of these claims.

*1.   False Arrest*

"A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." Voyticky v. Village of Timberlake, 412 F.3d 669, 677 (6th Cir. 2005) (citing Fridley v. Horrighs, 291 F.3d 867, 872 (6th Cir. 2002)). Probable cause is determined by the totality of the circumstances and from a reasonable law enforcement officer's on-scene perspective. United States v. Craig, 198 Fed. App'x 459, 462 (6th Cir.2006). Probable cause "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Estate of Dietrich v. Burrows, 167 F.3d 1007, 1010–11 (6th Cir. 1999). The establishment of probable cause requires only "a 'fair probability' that the individual to be arrested has either committed or intends to commit a crime." Fridley v. Horrighs, 291 F.3d 867,

8

872 (6th Cir.2002) (internal citation omitted). Mere speculation that a crime occurred is insufficient to establish probable cause. See McCurdy v. Montgomery Cnty., Ohio, 240 F.3d 512, 519 (6th Cir. 2001).

In this case, it is undisputed that, at the time Deputy Faircloth and Sergeant Mansfield approached the Plaintiff at her place of employment, they knew: (1) Mr. Nelson alleged she had called his home numerous times; (2) an Order of Protection was in effect and governed Plaintiff's actions toward Mr. Nelson; and (3) the Order of Protection directed that the Plaintiff "refrain from telephoning, contacting, or otherwise communicating" with Mr. Nelson.

Tennessee Code Annotated § 39-13-113 provides that it is a criminal offense to knowingly violate an order of protection and that a person violating an order of protection "may be arrested with or without a warrant." The knowledge Deputy Faircloth and Sergeant Mansfield possessed at the time they approached the Plaintiff was sufficient to conclude that there was a fair probability that the Plaintiff had committed a crime by violating § 39-13-113. Thus, the Court finds the officers had probable cause to arrest the Plaintiff at that time.

Moreover, shortly after she was mirandized but before officers informed her she was under arrest, the Plaintiff conceded that she had called Mr. Nelson's residence earlier in the evening. Thus, she admitted violating the Order of Protection. At that point, the probable cause for arresting the Plaintiff pursuant to § 39-13-113 was undeniable, and the Court finds that the resulting arrest was supported by probable cause. The Court further finds that there is "only one reasonable determination possible" with regard to the probable cause finding, and therefore, this issue need not be submitted to a jury. See Pyles v. Raisor, 60 F.3d 1211, 1215 (6th Cir. 1995).

Finally, the Court finds that Deputy Faircloth and Sergeant Mansfield also had probable cause to arrest the Plaintiff for evading arrest under Tennessee Code Annotated § 39-16-603 based upon her ignoring the officers' requests and the throwing of her phone. The Court, again,

9

finds that there is "only one reasonable determination possible" with regard to this probable cause finding, and therefore, this issue need not be submitted to a jury. See Pyles, 60 F.3d at 1215.

As noted above, the Plaintiff contests only one fact in this case: she asserts that she offered to allow Deputy Faircloth to listen to recordings of the calls she placed. The Court finds that this fact is not material. First, the Court finds that the facts support a finding of probable cause regardless of whether Deputy Faircloth listened to any recordings. Deputy Faircloth is not charged with weighing possible defenses. Deputy Faircloth's application of the provisions of the Tennessee Code Annotated to the facts presented demonstrated a fair probability that a crime had been committed, *i.e.* probable cause. Second, no duty to investigate is implicated in the probable cause analysis. As the Court of Appeals for the Sixth Circuit has explained, "A policeman . . . is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause." Criss v. City of Kent, 867 F.2d 259, 263 (6th Cir. 1988). Because there is no duty to investigate, Plaintiff's assertion that Deputy Faircloth failed to listen to the recordings offered is not material and is not an obstacle to the granting of summary judgment.

As stated above, the applicable legal framework precludes the Court from imposing the duty to investigate – or duty to listen to recordings – suggested by the Plaintiff. The Court would further note that, even if the Plaintiff's position was legally viable, she has wholly failed to support the position. In her Response, the Plaintiff relies on deposition testimony that was never filed with the Court. [Doc. 25 at 5 (referencing "Depo Nelson")]. When faced with a motion for summary judgment, the non-moving party is required to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file,

10

Case 3:11-cv-00098-HBG   Document 34   Filed 04/10/13   Page 10 of 17   PageID #: 298

designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (internal quotations omitted). The Court finds the Plaintiff in the instant case has not produced any affidavits, depositions, or other support for her position, and thus, the Court finds that she has not carried her burden as a non-movant under Rule 56.

Based upon the foregoing, the Court finds that, even viewing the facts in the light most favorable to the Plaintiff, there is no basis for concluding that Deputy Faircloth or Sergeant Mansfield lacked probable cause to arrest the Plaintiff. The Court, therefore, finds that the demonstrated probable cause undercuts an essential element of a claim for false arrest under § 1983. The Court finds that there are no genuine disputes as to material facts relating to this claim, and the Defendants are entitled to judgment on this claim as a matter of law.

2. *Malicious Prosecution*

The Court turns next to the Plaintiff's allegation of malicious prosecution.

The Court of Appeals for the Sixth Circuit has adopted the view that "[t]he existence of probable cause for an arrest totally precludes any section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution . . . ." Watson v. City of Marysville, 2013 WL 1224089 (6th Cir. Mar. 26, 2013) (quoting Mark v. Furay, 769 F.2d 1266, 1269 (7th Cir.1985)); see also Fox v. DeSoto, 489 F.3d 227, 237 (6th Cir. 2007).

The Court adopts herein its finding that Deputy Faircloth and Sergeant had probable cause to arrest the Plaintiff under both Tennessee Code Annotated § 39-16-603 and § 39-13-113 at the time she was arrested. Again, the Court finds that the issue of probable cause is not a jury question because there is "only one reasonable determination possible." See Pyles, 60 F.3d at 1215. The Court, therefore, finds that the Plaintiff's claim for malicious prosecution is not legally viable. The Court finds that there is no genuine issue of material fact with regard to the

11

Case 3:11-cv-00098-HBG   Document 34   Filed 04/10/13   Page 11 of 17   PageID #: 299

claim of malicious prosecution, and the Court finds that the Defendants are entitled to judgment as a matter of law.

**C.      Municipal Liability**

For the reasons stated above, the Court finds that neither of the Plaintiff's claims under the Constitution of the United States are viable. In addition, the Court finds that there is no issue of material fact as to municipal liability, and Anderson County is entitled to judgment in its favor on any claims against it or its officials.

*1.      Claims Against Deputy Faircloth, Sergeant Mansfield, or Sheriff Paul White in Their Official Capacities*

The Plaintiff has not clarified whether she brings her claims against the officers listed in her suit in their individual or official capacities. The Court has examined the claims against Deputy Faircloth and Sergeant Mansfield as suits brought against them individually. To the extent these claims were brought against the officers in their official capacities, the Court finds the claims constitute a suit against Anderson County, Tennessee. See Petty v. County of Franklin, Ohio, 478 F.3d 341, 349 (6th Cir. 2007).

The Plaintiff alleges no facts that would demonstrate that Anderson County Sheriff Paul White had any personal involvement in the incident at issue in this case. It appears that the suit is brought against Sheriff White in his official capacity, and the Plaintiff has not disputed assertion of the same by the Defendants. The Court finds that any claims against Sheriff White, in his official capacity, are claims against Anderson County, Tennessee. See id.

The claims against Anderson County, Tennessee are analyzed below.

12

Case 3:11-cv-00098-HBG   Document 34   Filed 04/10/13   Page 12 of 17   PageID #: 300

*2. Claims Against Anderson County, Tennessee*

"A plaintiff asserting a section 1983 claim on the basis of a municipal custom or policy must 'identify the policy, connect the policy to the [County] itself and show that the particular injury was incurred because of the execution of that policy.'" Graham v. County of Washtenaw, 358 F.3d 377, 383 (6th Cir. 2004) (quoting Garner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir. 1994)).

In her Complaint, the Plaintiff fails to identify any custom or policy of Anderson County, Tennessee, that is in any way related to the injuries she alleges. Instead, she alleges generally that Anderson County "failed to provide adequate guidelines or other means by which the Anderson County Sheriff's Department could avoid falsely arresting and prosecuting clearly innocent people such as plaintiff herein." [Doc. 1-1 at 2]. This statement that Anderson County generally failed to provide adequate guidelines is vague, and more importantly, it is inconsistent with the undisputed evidence before the Court.

The Court finds that Anderson County has demonstrated that Deputy Faircloth and Sergeant Mansfield, like other officers employed by the Anderson County Sheriff's Department, were required to be certified by the State of Tennessee's Peace Officers Standards and Training Commission ("POST"). Sheriff Paul White attests to the same in his affidavit. [Doc. 15-3]. Sheriff White explains that POST certification required at least forty hours of in-service training each year, which includes probable cause and arrest procedure training. [Doc. 15-3 at ¶ 14]. Further, Sheriff White confirms that he "personally assure[s] that all deputies are adequately trained by POST, the Anderson County Sheriff's Department, and that these officers keep their certifications or they are immediately terminated." [Id.]. In his affidavit, Sheriff White stated: "The personnel files of Charles Faircloth and Robert Mansfield confirm that both were POST certified officers at the time of Plaintiff's arrest on February 16, 2010." [Id. at ¶ 16].

13

To the extent Plaintiff's allegations could be construed as presenting a claim for failure to train, the Court finds that Anderson County has presented evidence of legally adequate training completed by its officer and, specifically, completed by Deputy Faircloth and Sergeant Mansfield. The Court finds the Plaintiff has not presented any evidence to dispute the material facts presented or the adequacy of the training under the law. Plaintiff has not presented any evidence that would support finding a failure to train, let alone a "failure to train that amounts to deliberate indifference." Alman v. Reed, 703 F.3d 887, 902 (6th Cir. 2013). Accordingly, the Court finds that there is no dispute as to any material fact and that Anderson County is entitled to judgment in its favor as a matter of law.

Anderson County responded to Plaintiff's allegation of an unconstitutional policy or custom by filing its Code of Conduct, which directs that "Reports submitted by employees shall be truthful and complete, and no employee shall knowingly enter or cause to be entered inaccurate, false, or improper information." [Doc. 15-3 at 17]. Further, the Code of Conduct directs: "Deputies shall not use more force in any situation than is reasonably necessary un[der] the circumstances." [Id. at 16]. In addition, the Code of Conduct provides: "Deputies shall not make any arrests or any search and seizure which they know or should know is not in accordance with law and Sheriff's Office procedures." [Id. at 18].

The Plaintiff has not filed any evidence in the docket to support her allegations of a policy of executing unsupported and/or malicious arrests. Her allegations are bare allegations that are not supported by affidavits, deposition testimony, or any documentary evidence. Based upon the foregoing, the Court finds that the Plaintiff has failed to identify a policy that is connected to her alleged injuries. There is no issue of material fact as to any claims against Anderson County, and the Court finds that the record supports the conclusion that Anderson

14

County is entitled to judgment in its favor as a matter of law on any claims of municipal liability based upon unconstitutional policies.

Based upon the foregoing, the Court finds that Anderson County has shown that there is no genuine dispute as to any material fact relating to its municipal liability, and the Court finds that Anderson County is entitled to judgment in its favor as a matter of law.

**D.  Qualified Immunity**

Finally, with regard to any claims Plaintiff presents as to individual officers, the Court finds that the officers have plead the qualified immunity defense, [Doc. 2 at ¶ 17], and the Plaintiff has failed to carry her burden of demonstrating that these officers are not entitled to qualified immunity.  See Dorsey v. Barber, 517 F.3d 389, 394-95 (6th Cir. 2008).

In determining whether qualified immunity applies, the Court employs a two-prong test, asking "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." Id. (quoting Estate of Carter v. City of Detroit, 408 F.3d 305, 310–311 (6th Cir. 2005)).

For the reasons more fully explained above, the Court finds that, even when considering the allegations in the light most favorable to the Plaintiff, a constitutional right has not been violated.  The Plaintiff was arrested based upon clearly established probable cause.  There is no evidence or even sufficient allegations to find that a constitutional right has been violated.  Accordingly and in addition to the findings above, the Court finds that Defendants Faircloth, Mansfield, and White are entitled to judgment in their favor based upon qualified immunity.

**E.  State Law Claims**

The remaining claims in this case are based on state law and were brought in a federal-question case.  Because the federal claims have been dismissed, Plaintiff's state-law claims can only be heard by the Court through the exercise of supplemental jurisdiction, pursuant to 28

15

U.S.C. § 1367. The exercise of federal supplemental jurisdiction is discretionary. District courts may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Here, the Court has dismissed all claims over which it has original jurisdiction, and thus, the rationale of § 1367(c)(3) applies. Further this case came to the Court on removal. "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." Gamel v. City of Cincinnati, 625 F.3d 949, 952 (6th Cir.2010) (citing Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254–55 (6th Cir.1996)).

The Court finds that the Plaintiff's state-law claims should be remanded to the Circuit Court for Anderson County, Tennessee.

## VI. CONCLUSION

In sum, the Defendants' Motion for Summary Judgment **[Doc. 15]** is **GRANTED IN PART** and **DENIED IN PART**. The Plaintiff's federal-law claims against the Defendants are **DISMISSED WITH PREJUDICE**. The Plaintiff's claims under state law are **REMANDED** to the Circuit Court for Anderson County, Tennessee. The Clerk of Court **SHALL** enter judgment and close this case.

**IT IS SO ORDERED**.

ENTER:

_s/ H. Bruce Guyton_
United States Magistrate Judge